**VELSICOL CHEMICAL CORPORATION, Plaintiff–Appellant,**

**The City of Memphis, Tennessee, Proposed Intervenor–Appellant,**

v.

**ENENCO, INC. and Browning–Ferris Industries of Tennessee, Inc., Defendants–Appellees.**

Nos. 92–5579, 92–5580.

United States Court of Appeals, Sixth Circuit.

Argued March 4, 1993.

Decided Nov. 12, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Jan. 20, 1994.

James W. Gentry, Jr. (briefed), Spears, Moore, Rebman & Williams, Chattanooga, TN, Oscar C. Carr, III (argued and briefed), Glankler, Brown, Gilliland, Chase, Robinson & Raines, Memphis, TN, for Velsicol Chemical Corp.

Allen T. Malone (argued), Memphis, TN, for Enenco, Inc.

Kevin L. Fast, Jeffrey N. Martin (argued and briefed), Hunton & Williams, Washington, DC, Michael F. Rafferty, John H. Harris, Jr., Harris, Shelton, Dunlap, & Cobb, Memphis, TN, for Browning–Ferris Industries of Tennessee, Inc.

Mark R. Haag (argued and briefed), Dept. of Justice, Environment & Natural Resource Div., Washington, DC, for U.S., amicus curiae.

Oscar C. Carr, III, Glankler, Brown, Gilliland, Chase, Robinson & Raines, Memphis, TN, for City of Memphis, Tenn.

Before: GUY and BOGGS, Circuit Judges, and BELL, District Judge.*

ROBERT HOLMES BELL, District Judge.

This consolidated appeal brought by Velsicol Chemical Corporation and the City of Memphis, Tennessee presents a number of fundamental questions concerning the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), 42 U.S.C. § 9601 *et seq.* At issue is whether the statute of limitations for a response cost recovery claim under CERCLA § 107, 42 U.S.C. § 9607, enacted as part of SARA in 1986, should be retroactively applied to an accrued-but-not-yet-filed claim and whether the equitable defense of laches is available for a section 107 claim.

**I.**

Our examination of the record below reveals no serious dispute in the relevant facts and procedural history. We therefore summarize them briefly.

**A.**

The North Hollywood Dump is a landfill of about 70 acres near the Wolf River in Memphis, Tennessee. The Curry family and other individuals owned the Dump site, but allowed the City of Memphis ("City") to operate it from 1930 to 1968.

During the City's operation, the Dump was primarily used for the disposal of municipal refuse. Industrial and chemical wastes were also disposed of at the Dump. Velsicol

Chemical Corporation ("Velsicol") was one of the entities that disposed of its wastes at the site.

In 1979, the United States Environmental Protection Agency ("EPA") began investigative studies of the Dump site. The studies revealed the presence of hazardous substances in the sediment and surface water. The EPA concluded that the contamination may have stemmed from the Dump-related activities.

In December 1980, Velsicol and the City, two of the "potentially responsible parties" ("PRPs"), joined forces with the EPA, the State of Tennessee, and the County of Shelby to form the Technical Action Group ("TAG") to plan the cleanup of the Dump site. The TAG's goal was to address both the short- and long-term problems caused by the contamination at the site. In February 1981, Velsicol and the City commenced some cleanup as part of the TAG's activities. A remedial investigation/feasibility study ("RI/FS")[1] was conducted at the Dump site, which was by then a designated site on the National Priorities List ("NPL").[2] Certain other activities—including the excavation and disposal of contaminated soils, the placement of clean imported fill, and the installation of a cover over some parts of the Dump site—occurred. By 1984, a regional office of the EPA, after reviewing the TAG's RI/FS, issued a "Record of Decision" ("ROD") to address the long-term cleanup needs for the site.

In February 1985, however, the EPA headquarters rejected the ROD for the Dump site. Issuing a "notice of deficiencies" to the PRPs (Velsicol and the City), the EPA headquarters required the completion of additional investigations and studies. In May 1990, Velsicol and the City submitted the "Supplemental RI/FS" to the EPA.

---

* The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

1. A party responsible for a cleanup must arrange to have an RI/FS performed. An RI/FS defines the nature and the extent of the contamination problem and evaluates alternative proposed (long-term) remedies at the site. *See United*

*States v. Akzo Coatings of America, Inc.*, 949 F.2d 1409, 1417 (6th Cir.1991).

2. The EPA is required to compile an NPL, which is a list of those sites most urgently in need of cleanup in the United States. 42 U.S.C. § 9605(a)(8)(B); *Eagle–Picher Industries, Inc. v. United States EPA*, 759 F.2d 922, 926 (D.C.Cir. 1985).

In September 1990, the regional office of the EPA issued the final ROD. The ROD set forth the long-term remedial measures for the Dump site. Velsicol and the City then agreed with the EPA to comply with that ROD.

### B.

Meanwhile, as the foregoing cleanup efforts were continuing, Velsicol and the City became embroiled in CERCLA response cost litigation.

In 1983, W.J. Curry & Son, Realtors, then owner of the Dump site, brought a state court tort action against Velsicol for damages allegedly caused by the disposal of hazardous substances at the Dump site. After removal to federal court, Velsicol was granted leave to file third party complaints against several other parties, including Enenco, Inc. ("Enenco") and Browning–Ferris Industries of Tennessee, Inc. ("BFI"), in 1986 and 1988. The third-party complaints alleged that Enenco and BFI, among others, were also PRPs of the contamination that occurred at the Dump site and sought CERCLA response cost recovery (pursuant to 42 U.S.C. § 9607(a)) and contribution (pursuant to 42 U.S.C. § 9613(f)) from them.

On June 2, 1989, the district judge in that case dismissed Velsicol's claims against Enenco and BFI for untimeliness. The district court found that Velsicol's delay in raising these claims was unjustifiable and unduly prejudicial to the original plaintiff and the third party defendants. The district court's order mentioned neither the statute of limitations nor the doctrine of laches.

On June 22, 1989, Velsicol commenced this action. Not unlike the third-party complaints in the dismissed action, Velsicol alleged that Enenco, BFI and others disposed of their wastes containing hazardous substances at the Dump site and thus should be liable for response costs. Velsicol brought cost recovery and contribution claims under CERCLA against them.

In October 1989, in Velsicol's action, Enenco and BFI then moved to dismiss Velsicol's complaint or, in the alternative, for summary judgment, arguing that the statute of limita-tions, CERCLA § 113(g), 42 U.S.C. § 9613(g), and the doctrine of laches barred Velsicol's claims. On April 4, 1991, the City also filed its motion to intervene as a party plaintiff to the Velsicol action.

After reassignment of the case, another judge heard oral arguments on the motions on January 21, 1992. The district court, treating Enenco's and BFI's motions as summary judgment motions, granted them from the bench. Velsicol's cost recovery and contribution claims were dismissed on the grounds of statute of limitations and laches. The district court also orally denied the City's intervention motion as untimely. These rulings were subsequently formalized in an order.

Velsicol and the City requested reconsideration of the order. The district court issued another order denying their request. In that order, however, the court clarified the ground for dismissal of Velsicol's contribution claim; the order stated that the contribution claim could not be maintained in light of the dismissal of the cost recovery claim.

Velsicol and the City now appeal from these orders.

### II.

Velsicol argues that the district court erroneously concluded that the cost recovery claim against Enenco and BFI was time-barred. Velsicol also requests reinstatement of its contribution claim. Finally, the City argues that it should have been allowed to intervene into Velsicol's action. We address each argument in turn.

### A.

Velsicol contends that the district court erred as a matter of law by granting summary judgment in favor of Enenco and BFI on Velsicol's cost recovery claim under section 107(a) of CERCLA. According to Velsicol, the claim was barred neither by the statute of limitations nor the doctrine of laches.

We begin our consideration of this argument by reciting the standards governing our review of the district court's grant of sum-

mary judgment. This Court applies *de novo* the same test as that used by the district court. *Adkins v. United Mine Workers of America,* 941 F.2d 392, 399 (6th Cir.1991). Summary judgment may be granted only if there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

■ Here, Velsicol challenges the district court's legal conclusions supporting the grant of summary judgment. Such conclusions are reviewed *de novo. Permanence Corp. v. Kennametal, Inc.,* 908 F.2d 98, 100 (6th Cir. 1990).

### (1).

As originally enacted in December 1980, CERCLA did not have a statute of limitations governing a cost recovery action under section 107(a). A statute of limitations for a cost recovery action was then enacted as part of the amendments to CERCLA, known as the Superfund Amendments and Reauthorization Act of 1986 ("SARA").[3] On October 17, 1986, the new statute of limitations, CERCLA § 113(g)(2), became effective.

The statute of limitations provides in pertinent part as follows:

> An initial action for recovery of the costs referred to in section 9607 [CERCLA § 107] of this title must be commenced—
> **(A)** for a removal action, within 3 years after completion of the removal action, except that such cost recovery action must be brought within 6 years after a determination to grant a waiver under section 9604(c)(1)(C) of this title for continued response action; and
> **(B)** for a remedial action, within 6 years after initiation of physical on-site construction of the remedial action, except that, if the remedial action is initiated

within 3 years after the completion of the removal action, costs incurred in the removal action may be recovered in the cost recovery action brought under this subparagraph.

42 U.S.C. § 9613(g)(2).

By its terms, then, this statute of limitations creates two initial time bars. Depending on the nature of the response action taken by the plaintiff,[4] a cost recovery action may be brought within 3 years of the completion of a "removal action" or within 6 years of the beginning of physical on-site construction of the "remedial action." *Id.*

■ The district court applied this statute of limitations retroactively to Velsicol's claim. The district court found that since Velsicol and other TAG members had initiated "physical on-site construction" of their "remedial action" in February 1981, the statute of limitations, notwithstanding its subsequent effective date of October 17, 1986, began to run its six-year course from the claim's accrual in February 1981 and accordingly barred the claim brought on June 22, 1989. In other words, the district court retroactively applied the statute of limitations to bar an accrued-but-not-yet-filed claim.

■ We cannot agree with this application. It is a well-established statutory presumption that a new congressional enactment will not be construed to have retroactive effect unless its language requires that result. *See Bowen v. Georgetown University Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988); *United States v. Security Indus. Bank,* 459 U.S. 70, 79, 103 S.Ct. 407, 413, 74 L.Ed.2d 235 (1982); *United States v. American Sugar Refining Co.,* 202 U.S. 563, 577, 26 S.Ct. 717, 719, 50 L.Ed. 1149 (1906).

We believe that this presumption applies here for several reasons. First, the text of

---

**3.** By passing SARA, "Congress sought to better define cleanup standards, to expand resources available to EPA for investigations and cleanups, to clarify EPA's authority under Superfund law, and to expand and clarify the states' role in any remedial action undertaken, or ordered, by EPA." *Akzo Coatings,* 949 F.2d at 1417.

**4.** Under CERCLA, there are two types of response action: a "removal" action and a "reme-

dial action." *See* 42 U.S.C. § 9601(23) (definition of "removal") and 9601(24) (definition of "remedial action"). Generally, the "removal" category applies to those circumstances involving an immediate action, while the long-range goals of cleaning up a site are achieved through "remedial actions."

SARA is silent on the question of whether the statute of limitations should be applied retroactively. Nothing in section 113(g)(2)— or in the entire section 113, which addresses litigation, jurisdiction and venue matters— sheds light on what Congress intended on the retroactivity question. Nor is there any language in other sections within the SARA amendments, such as a savings provision, that manifests a clear congressional intent on this question.

Second, the SARA legislative history on section 113(g)(2) is not instructive. Although some congressional committee reports explain the purpose of the new statute of limitations from the perspective of the federal government, *see, e.g.,* H.R.Rep. 253(I), 99th Cong., 1st Sess. 138 (1985), *reprinted in* 1986 U.S.Code Cong. & Admin.News 2835, 2920 (assuring fresh evidence and providing some measure of finality to the affected responsible parties), there is nothing in the legislative history that would clarify the legislative intent on the retroactive application of section 113(g)(2). *See generally* 132 Cong.Rec. H9561 (daily ed. Oct. 8, 1986) (House Conference Report); 132 Cong.Rec. S14895 (daily ed. Oct. 3, 1986) (Senate Conference Report). We can discern from legislative history no clear congressional intent that would mandate retroactive application of this new statute of limitations.

Third, while no appellate court has examined this retroactivity question, district courts have almost unanimously declared that the statute of limitations in section 113(g)(2) must be applied prospectively. *E.g., United States v. United Nuclear Corp.,* 814 F.Supp. 1552, 1561–62 (D.N.M.1992); *United States v. Fairchild Indus., Inc.,* 766 F.Supp. 405, 415 (D.Md.1991); *Environmental Transp. Systems, Inc. v. ENSCO, Inc.,* 763 F.Supp. 384, 388 (C.D.Ill.1991), *aff'd on other grounds,* 969 F.2d 503 (7th Cir.1992); *United States v. Marisol, Inc.,* 725 F.Supp. 833, 846 (M.D.Pa.1989); *United States v. Moore,* 698 F.Supp. 622, 625–27 (E.D.Va. 1988); *T & E Industries, Inc. v. Safety Light Corp.,* 680 F.Supp. 696, 704 (D.N.J.1988).

These courts, we think, have correctly recognized that a new congressional enactment cannot be applied retroactively without a clear sign of such congressional intent.

Fourth, Enenco's and BFI's arguments supporting the retroactive application of section 113(g)(2) are unpersuasive. They advance two principal arguments: that Congress manifested its intent to apply the statute of limitations retroactively to a pre-existing cost recovery claim and that the statute of limitations is procedural or remedial, and thus permits such retroactive application. We reject both arguments.

The contextual arguments made by Enenco and BFI—that Congress knew of the looming retroactivity question at the time that they considered and enacted the new statute of limitations—manifest little, if anything, to us about the congressional intent on the retroactive issue.

Further, assuming that a new "procedural/remedial" statute could be applied retroactively to an accrued-but-not-yet-filed claim and further assuming that section 113(g)(2) could be construed as a pure "procedural/remedial" statute, we are nonetheless persuaded that section 113(g)(2) should not be applied retroactively. Allowing the retroactive application, which would bar accrued-but-not-yet-filed pre-SARA CERCLA cost recovery claims, would violate our recent proclamation: that absent a specific congressional intent to the contrary, we will broadly interpret the CERCLA provisions in accordance with CERCLA's statutory goals of facilitating expeditious cleanups of inactive and abandoned hazardous waste sites and holding the responsible parties liable for the cleanups. *Anspec Co. v. Johnson Controls, Inc.,* 922 F.2d 1240, 1247 (6th Cir.1991).[5] In other words, we think that applying section 113(g)(2) only prospectively would avoid frustrating the legislative goals.

Accordingly, we conclude that under the prospective application of section 113(g)(2), Velsicol had, at the very least, three years

---

5. The Fourth Circuit has recently noted that the legislative history underlying SARA echoes the recurring theme of facilitating prompt cleanups "with even greater force than that underlying CERCLA's original enactment in 1980." *United States v. Monsanto,* 858 F.2d 160, 170 n. 18 (4th Cir.1988), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989).

from the effective date of statute of limitations, or until October 17, 1989, to file its cost recovery claim. Since Velsicol's claim was filed on June 22, 1989, the claim was not time-barred under section 113(g)(2).[6]

#### (2).

■ We also cannot agree with the district court's ruling that the doctrine of laches barred Velsicol's cost recovery claim under CERCLA section 107(a) and (b) and 42 U.S.C. § 9607(a) and (b).

Section 107 of CERCLA imposes liability for response costs for a cleanup of a hazardous waste site. Before setting forth the classes of persons liable, it begins with the following prefatory language: "Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section." 42 U.S.C. § 9607(a).

> Subsection (b) provides that:
> There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by
> (1) an act of God;
> (2) an act of war;
> (3) an act or omission of a third party other than an employee or agent of the defendant . . . ; or
> (4) any combination of the foregoing paragraphs.

*Id.* § 9607(b).

By its terms, then, section 107 liability is only barred by a limited number of enumerated causation-based affirmative defenses. The clear language of section 107(a) and (b), 42 U.S.C. § 9607(a)(b), manifests the con-

gressional intent to foreclose any non-enumerated defenses to liability. The only Court of Appeals that has directly addressed the question, has also recognized the plain language of section 107(b) as setting forth the universe of defenses to section 107 liability. *General Electric Co. v. Litton Industrial Automation Systems, Inc.*, 920 F.2d 1415, 1418 (8th Cir.1990), *cert. denied*, 499 U.S. 937, 111 S.Ct. 1390, 113 L.Ed.2d 446 (1991).

In concluding the district court erred by applying the doctrine of laches, we recognize that a cost recovery claim is equitable in nature, *see United States v. Northeastern Pharmaceutical & Chemical Co.*, 810 F.2d 726, 749 (8th Cir.1986). Theoretically this would allow equitable defenses to exist. We also recognize that some district courts have allowed non-enumerated equitable defenses to exist in CERCLA cost recovery litigation on that ground.[7] Nonetheless, we are reluctant to deviate from the plain statutory language of section 107.

We think that the District Court in *United States v. Kramer*, 757 F.Supp. 397 (D.N.J. 1991), aptly summarized our view:

> While it may be logical to permit equitable defenses in an inherently equitable proceeding, and sections 106 [42 U.S.C. § 9606, an abatement action under CERCLA] and 113 [42 U.S.C. § 9613(f), an action for contribution] both permit equitable considerations, the clear answer for section 107 is that Congress explicitly limited the defenses available to only those three provided in section 107(b). It is within the powers of Congress to so limit the district courts' discretion, and Congress did so in section 107.

757 F.Supp. at 427 (citation omitted). We accordingly believe that Velsicol's cost recovery claim must be reinstated.

---

**6.** Because of this determination, we need not reach the question of whether the district court correctly determined that Velsicol and other TAG members had initiated "physical on-site construction" of their "remedial action" in February 1981. Regardless of how their cleanup effort is treated under CERCLA, *see* 42 U.S.C. § 9601(23) & (24) (defining 'remedial' and 'removal action'), Velsicol's cost recovery claim was not barred by the statute of limitations.

**7.** *E.g., Merry v. Westinghouse Elec. Corp.*, 684 F.Supp. 852, 857 (M.D.Pa.1988); *United States v. Mottolo*, 605 F.Supp. 898, 909 (D.N.H.1985); *Mardan Corp. v. C.G.C. Music, Ltd.*, 600 F.Supp. 1049, 1057–58 (D.Ariz.1984), *aff'd on other grounds*, 804 F.2d 1454 (9th Cir.1986).

## B.

■ The district court also dismissed Velsicol's contribution claim under section 113(f) against Enenco and BFI. The district court clarified in its order denying Velsicol's request for reconsideration that the dismissal was based on the dismissal of Velsicol's cost recovery claim under section 107. Having concluded that the dismissal of the cost recovery claim was in error, we therefore reinstate the contribution claim.

## C.

■ Finally, having reinstated Velsicol's CERCLA claims, the question of whether the district court properly denied the City of Memphis's request for intervention under Fed.R.Civ.P. 24 in Velsicol's action must be addressed.

A proposed intervenor may move for "intervention by right" under Rule 24(a) or "permissive intervention" under Rule 24(b). In either case, however, the proposed intervenor must first show that the motion is timely. *NAACP v. New York*, 413 U.S. 345, 365, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973); *Michigan Ass'n for Retarded Citizens v. Smith*, 657 F.2d 102, 105 (6th Cir. 1981). And the district court's determination of whether a motion is timely is reviewed under the abuse of discretion standard. *NAACP v. New York*, 413 U.S. at 366, 93 S.Ct. at 2603; *Michigan Ass'n for Retarded Citizens*, 657 F.2d at 105.

■ In making the timeliness determination, the district court should review all the circumstances. *Id.* Among others, the following circumstances should be considered: (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application for intervention during which the proposed intervenor knew or reasonably should have known of his interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure after he knew of or reasonably should have known of his interest in the case promptly to apply for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention. *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir.1990).

Here, the district court denied the City's motion for intervention as untimely. From the record below, however, it is unclear whether the district court made such a ruling in light of its prior ruling dismissing Velsicol's claims, which we have found erroneous. We therefore believe that the district court, on remand, should redetermine the City's motion pursuant to the standards set forth above. We vacate the district court's order denying intervention.

## III.

For the reasons stated above, we reverse the orders of the district court dismissing Velsicol's action, vacate the orders denying the City of Memphis's motion for intervention, and remand the case for further proceedings consistent with this opinion.