**TOWN OF MUNSTER, INDIANA,**
Plaintiff–Appellant,

v.

**SHERWIN–WILLIAMS CO., INC.,**
Defendant–Appellee.

No. 93–2751.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 7, 1994.

Decided June 27, 1994.

Eugene M. Feingold (argued), Steven P. Kennedy, Munster, IN, for plaintiff-appellant.

Paul A. Leonard, Jr., Joseph S. Van Bokkelen, Jane B. Amdahl (argued), Goodman, Ball & Van Bokkelen, Highland, IN, for defendant-appellee.

Deborah A. Lawrence, Jacqueline A. Simmons, Ice, Miller, Donadio & Ryan, Indianapolis, IN, for amici curiae Indiana Mun. Lawyer's Ass'n, Indiana Ass'n of Cities and Towns.

Before COFFEY, FLAUM, and MANION, Circuit Judges.

FLAUM, Circuit Judge.

The Town of Munster, Indiana, ("Munster") brought a private cost recovery action against Sherwin–Williams Co., Inc. ("Sherwin–Williams") under § 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607, seeking contribution for the cost of cleaning up hazardous waste on a tract of land owned by Munster. The parties tried the case to a magistrate who concluded that the equitable defense of laches barred Munster's claim. 825 F.Supp. 197. We vacate the judgment.

I.

In 1969, the Town of Munster acquired a 140–acre parcel of undeveloped land adjacent to what is now the municipal landfill. Prior to that time, the land was owned by the National Brick Company, and a portion of the land (the "drum site") had been used for unauthorized dumping by National Brick and others. In February, 1985, the United States Environmental Protection Agency ("EPA") informed James Mandon, Munster's Director of Public Works, that drums suspected of containing hazardous materials had been found on the town's property. The EPA then retained Weston Sper Company ("Weston") to perform a site assessment and draft a report of their findings. Weston's tests revealed the presence of numerous hazardous substances that presented a danger to public health and safety. In November, 1985, the EPA delivered to Munster a copy of the Weston report and informed Munster of its obligation, as a Potentially Responsible Party ("PRP") under CERCLA, to prepare a plan for the removal of the dangerous materials from the site.

For over a year thereafter Munster attempted to negotiate a consent decree that would have allowed it to conduct an independent investigation of the site. The EPA declined to enter into such a decree, and on January 5, 1987, issued an Administrative Order under § 106 of CERCLA, 42 U.S.C. § 9606, requiring Munster to submit both a work plan and a safety plan, along with bid specifications for cleaning up the drum site. Munster then commenced a competitive bidding process and awarded the contract to Maecorp on June 1, 1987. Maecorp completed the bulk of the clean-up in September and October, 1987. On July 27, 1988, Munster received final approval from the EPA, indicating that the town had complied fully with the § 106 clean-up Order.

Even before the clean-up, Munster suspected that Sherwin–Williams may have been involved in some of the dumping. The actual removal of approximately fourteen or fifteen of the drums bearing either the name "Sherwin–Williams" or the name "F. Fischer", identified as a manager in Sherwin–Williams' flush color department, confirmed this impression. On March 24, 1989, almost eight months after receiving final approval from the EPA, Munster notified Sherwin–Williams of its potential liability under CERCLA as a generator, transporter, and/or disposer of hazardous waste materials found at the drum site.

A year and a half later, on September 25, 1990, Munster filed suit against Sherwin–Williams seeking contribution for the clean-up costs.[1] By consent of the parties, the action was tried before a magistrate. On June 23, 1993, after a four-day trial, the magistrate entered judgment for Sherwin–Williams on the ground that the doctrine of laches barred Munster's suit. Munster appeals from this judgment.

II.

■ This case presents a straight-forward question of law—whether CERCLA permits the assertion of the equitable defense of laches to bar recovery in a private party cost recovery or contribution action—which we

---

1. The total clean-up costs incurred by Munster amounted to $230,000.

review *de novo. Ambrosino v. Rodman & Renshaw,* 972 F.2d 776, 786 (7th Cir.1992). Under the CERCLA statutory scheme, § 107 (codified at 42 U.S.C. § 9607) governs liability, while § 113(f) creates a mechanism for apportioning that liability among responsible parties. *See Kerr–McGee Chemical v. Lefton Iron & Metal,* 14 F.3d 321, 325–26 (7th Cir.1994); *United States v. ASARCO, Inc.,* 814 F.Supp. 951, 956 (D.Colo.1993). Section 107(a) states in relevant part:

Notwithstanding any other provision or rule of law, and *subject only to the defenses set forth in subsection (b)* of this section—

\* \* \* \* \* \*

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility owned or operated by another party or entity and containing such hazardous substances, ... [shall be liable for]

\* \* \* \* \* \*

(A) all costs of removal or remedial action incurred by the United States Government or a State not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; ...

42 U.S.C. § 9607(a) (emphasis supplied). Section 107(b) further states:

There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by—

(1) an act of God;

(2) an act of war;

(3) an act or omission of a third party other than an employee or agent of the defendant, ...; or

(4) any combination of the foregoing paragraphs.

42 U.S.C. § 9607(b). Under § 113(f), any party found liable for clean-up costs may seek contribution from other liable or potentially liable parties and "[i]n resolving contribution claims, the court may allocate response costs among liable parties *using such equitable factors* as the court determines are appropriate...." 42 U.S.C. § 9613(f)(1) (emphasis supplied).

In filing this private party contribution action under both §§ 107 and 113, Munster asserted that CERCLA imposes strict liability on responsible parties, subject only to the short and exclusive list of defenses in § 107(b). Sherwin–Williams raised the equitable doctrine of laches as an affirmative defense. The magistrate noted the split of authority on the availability of equitable defenses in a CERCLA private recovery action, but concluded that the arguments in favor of allowing such defenses were "more persuasive" than the admittedly "strong" counterarguments. Findings of Fact and Conclusions of Law at 6. We disagree, and therefore join the majority of courts, including the Third, Sixth, and Eighth Circuits, in holding that CERCLA does not permit equitable defenses to § 107 liability, although we do conclude that equitable factors may be considered in the allocation of contribution shares. *See Velsicol Chemical Corp. v. Enenco, Inc.,* 9 F.3d 524, 530 (6th Cir.1993) (holding that the doctrine of laches may not bar CERCLA cost recovery action); *General Electric v. Litton Indus. Automation Systems,* 920 F.2d 1415, 1418 (8th Cir.1990) (holding that CERCLA does not provide for an unclean hands defense to liability), *cert. denied,* 499 U.S. 937, 111 S.Ct. 1390, 113 L.Ed.2d 446 (1991); *Smith Land & Imp. Corp. v. Celotex Corp.,* 851 F.2d 86, 90 (3d Cir.1988) (concluding that under CERCLA the doctrine of caveat emptor is not a defense to liability for contribution but may be considered in mitigation of the amount due), *cert. denied,* 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989).

In concluding that the district court erred in applying the doctrine of laches, we recognize that a cost recovery action is equitable

in nature, *Velsicol,* 9 F.3d at 530, and that ordinarily "all the inherent equitable powers of the District Court are available for the proper and complete exercise of [its equitable] jurisdiction." *Porter v. Warner Holding Co.,* 328 U.S. 395, 398, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332 (1946). Of course, Congress "may intervene and guide or control the exercise of the courts' discretion," but the Supreme Court has taught that we should not "lightly assume that Congress has intended to depart from established principles." *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 313, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982). As the Court stated in *Porter,*

> [T]he comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command. Unless a statute in so many words or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied.

328 U.S. at 398, 66 S.Ct. at 1089.

■ Here the clear and unambiguous language of § 107(a) imposes liability "notwithstanding any other provision or rule of law, and subject *only* to the defenses set forth in subsection (b)." 42 U.S.C. § 9607(a) (emphasis supplied). Subsection (b) then establishes "the universe of defenses to section 107 liability," *Litton,* 920 F.2d at 1418, with no mention whatsoever of equitable defenses. 42 U.S.C. § 9607(b). Sections 107(a) and (b), read together, plainly evince the exercise of Congress' authority to restrict the equitable powers of the federal courts. As we know, when the words of a statute are unambiguous, the "judicial inquiry is complete." *Connecticut National Bank v. Germain,* — U.S. ——, ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) (citations omitted); *Oberg v. Allied Van Lines, Inc.,* 11 F.3d 679, 683 (7th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 2104, 128 L.Ed.2d 665 (1994). Nevertheless, for good measure, we note that references to § 107 in the legislative history of CERCLA are fully consistent with our reading of the text. As the House Report explained,

> This section [107] clarifies and confirms the right of a person held jointly and sev-

erally liable under CERCLA to seek contribution from other potentially liable parties, when the person believes that it has assumed a share of the clean-up or cost that may be greater than its equitable share under the circumstances.... Although the only defenses to liability remain those set forth in Section 107(b), courts are to resolve such [contribution] claims on a case-by-case basis, taking into account relevant equitable considerations.

H.R.Rep. No. 253(I), 99th Cong., 2d Sess. 1, 79–80 (1985), *reprinted in* 1986 U.S.Code Cong. & Admin.News 2835, 2861–2862; *see also Smith Land,* 851 F.2d at 90; *United States v. Kramer,* 757 F.Supp. 397, 425 (D.N.J.1991).

Sherwin–Williams characterizes the plain language argument advanced by Munster and accepted today by this court as "cramped and untenable," and advances a few theories in support of the magistrate's decision to consider laches as a defense to liability. None of these theories are persuasive.

Sherwin–Williams first contends that limiting defenses to those enumerated in § 107(b)—thus, by implication, depriving defendants of the protection of statutes of limitations, accord and satisfaction, *res judicata,* and indemnity and hold harmless agreements—would lead to absurd results that Congress could not have intended. *See* Monica Conyngham, Note, *Robbing the Corporate Grave: CERCLA Liability, Rule 17(b), and Post–Dissolution Capacity to be Sued,* 17 B.C.Envtl.Aff.L.Rev. 855 (1990) ("Carried to its logical extreme, reading clear intent to supercede all non-statutory defenses into CERCLA's broad language and legislative history leads one to conclude that Congress intended to supercede all of the rules of civil procedure or judicial doctrines of res judicata or accord and satisfaction, whenever they frustrate the imposition of liability under CERCLA."). We find this "parade of horribles" argument unconvincing. As an initial matter, no legal or statutory defenses are before this court as the trial court based its judgment exclusively on the equitable defense of laches. Accordingly, our holding is limited to the simple proposition that CERC-

LA does not permit *equitable* defenses to § 107 liability. We see nothing illogical or untenable about a statutory scheme that bars equitable *defenses* to liability but allows the consideration of equitable *factors* in apportioning costs between various responsible parties.[2] Moreover, though we need not (and do not) decide the matter, we doubt seriously that *res judicata,* collateral estoppel, accord and satisfaction, and statutes of limitation are "defenses" as CERCLA employs that term. *See* Jonathan T. Uejio, Note, *Common Law Tort Defenses Under CERCLA,* 1 Fordham Envtl.L.Rev. 81 (1989). While the statute does not define the term, we read the defenses enumerated in § 107(b) as addressing the causation element of the underlying tort and negating the plaintiff's prima facie showing of liability. *See id.* at n. 54. A defendant who claims that he already has litigated the same matter (res judicata), reached agreement on and paid for its damages (accord and satisfaction), or was not sued within the relevant limitations period does not contest whether the plaintiff can establish liability under § 107; rather he interposes a legal or statutory shield against having to litigate (or relitigate) the issue or case. Indeed, as noted by the Third Circuit, other provisions of CERCLA itself "suggest additional defenses in a broad sense"—including some of those whose absence in § 107(b) concerns Sherwin–Williams. *See Smith Land,* 851 F.2d at 89. For example, § 113(g) explicitly provides a limitations period, § 113(f)(2) permits a party which has resolved its liability to the government to escape further liability for contribution, and § 107(e) allows the enforcement of private agreements to indemnify or hold harmless. While no explicit provision addresses the applicability of *res judicata* in private actions, we would find it difficult to accept that a CERCLA defendant may not raise "a rule of fundamental and substantial justice, 'of pub-

lic policy and of private peace,'" *Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394, 401, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103 (1981), as a bar to relitigating issues that were or could have been raised in a previous action. *See Aliff v. Joy Mfg. Co.,* 914 F.2d 39, 43–44 (4th Cir.1990) (holding that judgment in a fraud action acted as *res judicata* to bar purchaser from bringing subsequent action against vendor under CERCLA).

▪ Sherwin–Williams next constructs an argument in favor of allowing equitable defenses based on its reading of CERCLA's § 101(32) definition of liability and the Supreme Court's *Romero–Barcelo* decision. As the trial court noted, § 101(32) states that "'liable' or 'liability' under CERCLA shall be construed to be the standard of liability which obtains under section 1321 of Title 33 [the Federal Water Pollution Control Act ("FWPCA")]." 42 U.S.C. § 9601(32). In *Romero–Barcelo,* the Court concluded that Congress had not withdrawn the district courts' traditional equitable discretion in enforcing the FWPCA. 456 U.S. at 316, 102 S.Ct. at 1805. According to Sherwin–Williams, "It is only logical 'if two acts apply the same liability standard, and one act permits application of equitable defenses, so should the other." Br. at 16 (citing *United States v. Mottolo,* 695 F.Supp. 615, 627 (D.N.H.1988)). While this syllogism has appeal at first glance, it, too, fails to get Sherwin–Williams over the hump. As an initial matter, we believe that the term "standard of liability" in § 101(32) most likely means no more than that CERCLA, like the FWPCA, is a strict liability statute. Even if one were to challenge such an interpretation, however, this case differs from *Romero–Barcelo* in a fundamental way. The *Romero–Barcelo* Court explicitly recognized that Congress, through a clear and valid legislative command, could restrict the district courts' equity jurisdiction. 456 U.S. at 313, 102 S.Ct. at

---

**2.** At the apportionment stage, § 113(f)(1) authorizes courts to "allocate response costs among liable parties using such equitable factors as the court determines are appropriate," thereby affording considerable "discretion to use equitable factors in apportioning damages in order to mitigate the hardships of imposing joint and several liability upon defendants who have only contributed a small amount to a potentially large indi-

visible harm." *United States v. Stringfellow,* 661 F.Supp. 1053, 1060 (C.D.Cal.1987); *see also* H.R.Rep. No. 253(III), 99th Cong., 2d Sess. 1, 18–19 (1985), *reprinted in* 1986 U.S.Code Cong. & Admin.News 3038, 3041–3042 ("[A]fter all questions of liability and remedy have been resolved, courts may consider any criteria relevant to determining whether there should be an apportionment.").

1803. The Court did not find such a command in the FWPCA, but it clearly acknowledged that Congress could insert one in other statutes. As noted above, *supra* at 1271, CERCLA is such a statute.

■ Assuming that equitable defenses may not be employed to bar liability, Sherwin–Williams submits two alternative grounds upon which this court may affirm the decision below. First, Sherwin–Williams asks us to view the findings underlying the trial court's conclusion that laches applied (unreasonable delay and resulting prejudice) as mitigating factors that relieve Sherwin–Williams of any obligation at the apportionment stage. In so doing, Sherwin–Williams invites us to perform a function for which we are ill-suited. At the damages phase of a CERCLA trial, a court may consider many factors which could not properly be considered during the liability phase. *See United States v. Atlas Minerals and Chemicals, Inc.*, 797 F.Supp. 411, 418 (E.D.Pa.1992). While delay and prejudice certainly are among those factors, there are many others. *See Kerr–McGee Chemical*, 14 F.3d at 326. The magistrate's findings of fact and conclusions of law do not indicate whether any other factors might be relevant to apportionment here, and we will neither speculate nor search the record ourselves to find out. That is not our role.

3. We pause here to address what may have been a misapprehension on the part of the trial court as to the elements of liability under CERCLA. In paragraph 4 of his Conclusions of Law, the magistrate ruled that Sherwin–Williams had established prejudice arising from Munster's delay in bringing suit. In so doing, the court also noted that "Munster failed to identify which hazardous substances came from Sherwin–Williams containers or drums." This statement implies that Sherwin–Williams may escape liability unless Munster can successfully trace specific improperly disposed waste to Sherwin–Williams. The statutory scheme and case law, however, suggest otherwise. As our colleagues on the Fourth Circuit have concluded,

> In deleting causation language from section 107(a), we assume as have many other courts, that Congress knew of the synergistic and migratory capacities of leaking chemical waste, and the technological infeasibility of tracing improperly disposed waste to its source. In view of this, we will not frustrate the statute's

■ Sherwin–Williams also contends that we should affirm because Munster failed to establish a prima facie case on the issue of liability. Liability is established under CERCLA § 107(a) if:

(1) the site in question is a "facility" as defined in § 101(9);

(2) the defendant is a responsible person under § 107(a);

(3) a release or a threatened release of a hazardous substance has occurred; and

(4) the release or the threatened release has caused the plaintiff to incur response costs.

*Kerr–McGee Chemical*, 14 F.3d at 325 (citations omitted).[3] Here we find the magistrate's conclusion that laches barred Munster's action effectively forestalled consideration of the merits of the case, including a finding as to whether Munster had satisfied the prima facie elements of liability. Though the parties devoted a few pages of their respective briefs to this question, again we must decline to reexamine and reweigh the evidence based solely on the written record.

### III.

The plain language of § 107 explicitly limits the defenses to liability under CERCLA to those enumerated in the statute, none of which mention or even imply that equitable defenses are available. The magistrate

> salutary goals by engrafting a 'proof of ownership' requirement, which in practice would be as onerous as the language Congress saw fit to delete.

*United States v. Monsanto Co.*, 858 F.2d 160, 170 (4th Cir.1988) (footnote and citation omitted), *cert. denied*, 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989). In other words, "there is no need for the [plaintiff] to show that a particular defendant's waste was released; the [plaintiff] need only show that waste of the same type deposited (or transported) by the defendant was found at a site where there has been a release or a threatened release." *Atlas Minerals & Chemicals*, 797 F.Supp. at 416 n. 3. Or, put more simply, the plaintiff need not "match the waste found to each defendant as if it were matching fingerprints." *Commonwealth of Massachusetts v. Blackstone Valley Elec. Co.*, 808 F.Supp. 912, 915 (D.Mass.1992) (citation omitted); *see also City of New York v. Exxon Corp.*, 744 F.Supp. 474, 480 n. 10 (S.D.N.Y.1990); *United States v. Wade*, 577 F.Supp. 1326, 1332–1333 (E.D.Pa. 1983).

judge therefore erred in entering judgment for Sherwin–Williams under the equitable doctrine of laches. Munster's cost recovery claim must be reinstated for a determination of liability and, if necessary, apportionment. At the apportionment stage, of course, the court may consider such equitable factors as it deems appropriate. Accordingly, we VACATE the judgment and REMAND the case for further proceedings consistent with this opinion.