**BLASLAND, BOUCK & LEE, INC., Plaintiff,**

v.

**CITY OF NORTH MIAMI, Defendant.**

No. 97–1484CIV.

United States District Court, S.D. Florida.

April 27, 2000.

Kirk Lee Burns, Evan Marc Golden-
berg, Miami, FL, for plaintiff.

Ridgway M. Hall, Jr., Crowell & Moring, LLP, Washington, DC, Earl G. Gallop, Nagin, Gallop & Figueredo, Miami, FL, for defendant.

### MEMORANDUM OPINION ON CERCLA CLAIMS

HURLEY, District Judge.

█ THIS CAUSE is before the court upon the parties' respective claims under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601–75. The parties joined their CERCLA claims with several state law claims based on the same facts; the state law claims were heard by a jury while the CERCLA claims were submitted to the court.[1] The seven-member jury returned a unanimous verdict on the state law claims, finding each party liable in part to the other. After the jury verdict, the court heard additional evidence relating solely to the CERCLA claims and now issues the following findings of fact and conclusions of law relevant to those claims.

### I. FINDINGS OF FACT

1. Plaintiff/counter-defendant, Blasland, Bouck & Lee, Inc. ("BB & L"), is an environmental engineering firm.

2. Defendant/counter-plaintiff, the City of North Miami (the "City"), is a municipal corporation and the owner of a 350-acre parcel of property in north Miami known as the Munisport landfill ("Munisport").

3. In an ill-conceived effort to upgrade the property for eventual use as a recreational area, the City permitted Munisport to be operated as a landfill from 1974 to 1980.

4. On September 8, 1983, the Environmental Protection Agency ("EPA") placed Munisport on the National Priorities List of uncontrolled hazardous release sites due to the decomposition of waste into ammonia. The ammonia was leaching into the

underlying groundwater and then migrating toward a mangrove preserve.

5. On July 26, 1990, the EPA issued its Record of Decision ("ROD") pursuant to which it promulgated a comprehensive cleanup plan for the landfill.

6. On September 24, 1991, the City entered into a consent decree with the EPA, obligating the City to clean up Munisport and reimburse the EPA for its costs. The Consent Decree was approved by the court on March 20, 1992. *See United States v. City of North Miami*, Case No. 91–2834–Civ–Marcus (S.D.Fla.).

7. By written contract dated July 14, 1992, the City hired BB & L to assist it in implementing the cleanup plan for Munisport. BB & L was primarily responsible for conducting hydrogeologic studies of the aquifer and using those studies to design a leachate collection system. The parties considered this work to be "in-scope work," and it was to be performed for a fixed price ($1.4 million), as set forth in the contract.

8. The contract also contemplated that additional work might be necessary and could be authorized with the parties' mutual consent. The parties subsequently agreed to certain additional work and characterized it as "out-of-scope work." The out-of-scope work was billed on a time-and-cost basis at BB & L's then-current hourly rates.

9. Contained within the contract was a provision known as the "pay-when-paid" clause, which stated:

City shall only be responsible for expeditiously processing (within five (5) days of receipt of invoice) payment of such invoices of BB & L through the D.E.R. [Florida Department of Environmental Regulation], and BB & L recognizes that City's obligation of payment of compensation is specifically contingent upon City's receipt of funding from the

---

1. No right to a jury trial exists for claims brought under CERCLA. *See Hatco Corp. v.*

*W.R. Grace & Co.*, 59 F.3d 400, 412 (3d Cir. 1995).

D.E.R. for payment of such fees, costs, and expenses of BB & L.

*See* Pl.'s Ex. 11 at 2.

10. As required by the pay-when-paid clause, the City submitted BB & L's invoices in a timely manner to the State.

11. The State paid the majority of BB & L's invoices but refused to pay some, citing insufficient documentation. These unpaid invoices make up part of BB & L's alleged damages.

12. Between July 1992 and June 1995, BB & L performed a variety of work at Munisport, including aquifer pump tests, computer modeling, and surface and groundwater sampling. In addition, BB & L breached a causeway (permitting tidal flow into a mangrove area), realigned a dike, and negotiated with the State concerning the City's landfill closure permit application. BB & L was not paid for all of the work it performed.

13. One pump test (pump test # 3) BB & L conducted had particular significance. That test yielded a three-gallon-per-minute extraction rate. The extraction rate was substantially lower than both BB & L's expectations and the rates from other pump tests. Despite this seemingly anomalistic result, BB & L insisted upon using the three-gallon-per-minute rate as the basis for its design of the leachate collection system.

14. The three-gallon-per-minute rate was inaccurate and resulted from BB & L's failure to comply with procedures and standards governing environmental engineers.

15. On June 1, 1995, prior to the completion of the project, the City terminated the contract with BB & L.

16. At the time of its termination, BB & L had not been paid for work valued at $486,083.51. Of that figure, $375,283.51 represented out-of-scope work, specifically work done on: (a) the causeway breach; (b) the dike realignment; and (c) the City's landfill closure application. Unpaid in-scope work included: $75,000 for field data acquisition, $31,000 withheld by the State

as retainage for the landfill closure permit application work, and $4,800.00 for surface water sampling.

17. The City never received from the State the amounts alleged in Finding of Fact 16 for field data acquisition, landfill closure permit application work, and surface water sampling.

18. The work for which BB & L had not been paid is unrelated to the work forming the basis of the City's counterclaim for professional malpractice and, in particular, is unrelated to pump test # 3.

19. The City replaced BB & L with another environmental engineering firm, Secor International.

20. On May 7, 1997, BB & L sued the City, alleging a cost recovery claim under CERCLA, 42 U.S.C. § 9607 (Count I of the complaint), three state common law claims, and one state statutory claim.

21. The City counterclaimed against BB & L alleging a contribution claim under CERCLA, 42 U.S.C. § 9613 (Count III of the amended counterclaim), and two state common law claims.

Based on the foregoing, the court reaches the following:

## II. CONCLUSIONS OF LAW

1. The court has jurisdiction over the parties' CERCLA claims pursuant to 42 U.S.C. § 9613(b), which provides that "United States district courts shall have exclusive original jurisdiction over all controversies arising under this chapter [Chapter 103]."

2. Munisport is a "facility" as defined by CERCLA. *See* 42 U.S.C. § 9601(9).

3. Ammonia is a "hazardous substance" as defined by CERCLA. *See* 42 U.S.C. § 9601(14).

4. BB & L served as the City's "response action contractor." *See* 42 U.S.C. § 9619(e)(2)(A).

■ 5. Some of BB & L's work was performed in a manner which fell below the

standard of care for environmental engineering firms. Specifically, the court concludes that pump test # 3 was done negligently, and BB & L's subsequent reliance on the resulting three-gallon-per-minute extraction rate to design the leachate collection system constituted professional malpractice. . Because the court finds that BB & L's negligent acts were distinct from the work for which it claims damages, *see* Finding of Fact 17, *supra*, the court concludes that this negligence does not preclude BB & L from recovering its damages under CERCLA.

### A. *BB & L Can Pursue a CERCLA Cost Recovery Claim Against the City*

■ Pursuant to the cost recovery provisions of CERCLA, 42. U.S.C. § 9607(a), BB & L seeks to recover the same damages it sought under its state law claims.[2] Those damages can be grouped into three categories:

Category 1: $375,283.51 for causeway breach, dike realignment, and landfill closure;

Category 2: $79,800 for surface water sampling and field data acquisition; and

Category 3: $31,000 for money retained by the state of Florida that relates to the City's application for landfill closure.[3]

As a defensive measure, the City filed a counterclaim under the contribution provisions of CERCLA, 42 U.S.C. § 9613(f.). By so doing, the City sought to characterize BB & L as a "potentially responsible party." Because parties who may themselves be liable for the payment of response costs may not bring cost recovery

claims, the City contends that BB & L's claim is improper. *See Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496, 1513 (11th Cir.1996) (only innocent parties may bring CERCLA cost recovery actions).

■ There is little doubt that potentially responsible parties are barred from bringing cost recovery actions; however, in this case, BB & L is not a potentially responsible party.[4] A potentially responsible party is an owner or operator of a CERCLA facility, or one who arranged for the disposal or treatment of hazardous substances at a facility. *See* 42 U.S.C. § 9607(a). There is no allegation that BB & L was an owner. Instead, the City contends that BB & L was an "operator" and an "arranger" at Munisport because:

1. as the City's response action contractor, BB & L was in "operational control" of the site;

2. BB & L's delay and eventual failure to develop a remedial design permitted the ammonia leachate to continue to migrate toward the mangrove preserve; and

3. BB & L's excavation of soil at ten locations to obtain samples of the waste already present in the ground contaminated the "clean cover."

There is no support for the City's first premise that BB & L became a CERCLA operator merely by serving as the City's response action contractor. Munisport stopped operating as a landfill in 1980, twelve years before the City hired BB & L. Moreover, engaging in clean-up activities at a facility does not qualify as the type of "operation" CERCLA contemplates. *Cf. United States v. Bestfoods,* 524

---

**2.** BB & L is *not* seeking to recover under CERCLA any money for copying and transferring files to the City. *See* Tr. at 3402 (Feb. 15, 2000). The amount BB & L requested under its state law claims for transferring files was $14,500, of which the jury awarded $5,000. *See* Verdict [DE # 277].

**3.** Under the state law claims, the jury awarded BB & L all its Category 1 damages, but

refused to award damages for either Category 2 or 3.

**4.** Potentially responsible parties may bring contribution actions against other liable parties under 42 U.S.C. § 9613(f). *See OHM Remediation Serv. v. Evans Cooperage Co., Inc.,* 116 F.3d 1574, 1581–82 (5th Cir.1997).

U.S. 51, 118 S.Ct. 1876, 1887, 141 L.Ed.2d 43 (1998) (defining CERCLA "operator" as "someone who directs the workings of, manages, or conducts the affairs of a facility"). Thus, BB & L was not an operator of Munisport.

■ To be liable as an arranger, a party must take an affirmative step to introduce hazardous substances to an area—mere inaction or inept action which fails to remedy but does not worsen existing contamination is not sufficient. *See Redwing Carriers,* 94 F.3d at 1506. In *Redwing Carriers,* a party allegedly agreed to clean up certain hazardous tar seeps but failed to do so. The court held the mere failure to act did not constitute disposal. *See id.* ("While this inaction ... may amount to a breach of an alleged contractual duty, it does not amount to an 'arrangement' for disposal within the meaning of CERCLA."). Here, the City alleges BB & L's negligence enabled ammonia to *continue* to migrate through the landfill. This is insufficient to establish arranger liability because no affirmative step was taken.

■ The City contends that BB & L took an affirmative step when it dug a series of pits in order to obtain samples of the waste, thereby causing previously clean soil on the surface to become contaminated. This argument has two flaws. First, there is no evidence that so-called clean soil was contaminated when BB & L took the samples. Record evidence shows only that the samples contained hazardous substances, not that such hazardous substances were spread to previously uncontaminated areas. After obtaining the samples, the pits were refilled with the very material that came out of them. This activity does not constitute disposal. *Cf. Redwing Carriers,* 94 F.3d at 1510–11 (returning soil from whence it came does not amount to disposal of a hazardous substance).

■ The second flaw in the City's argument is that a response action contractor cannot be liable for response costs unless it is negligent and such negligence causes the release of a hazardous substance. *See* 42 U.S.C. § 9619(a)(1) & (2). While courts have recognized the possibility that response action contractors could be held liable for negligently spreading contaminated soil into clean areas, *see Redwing,* 94 F.3d at 1510–11; *United States v. CDMG Realty Co.,* 96 F.3d 706, 720–22 (3d Cir. 1996), there is no evidence in this case that BB & L conducted its soil investigation negligently.[5] Ammonia was leaching from Munisport long before BB & L arrived, and BB & L did nothing to exacerbate that condition. Therefore, the court concludes that BB & L's excavation activities did not cause it to become a CERCLA arranger.

■ Based on the foregoing, the court holds BB & L is not a potentially responsible party within the meaning of CERCLA. The court recognizes that cost recovery actions are most commonly brought by the government and that it is rare for a private party to incur response costs for which it would be entitled to seek recovery under Section 9607. *See New Castle County v. Halliburton NUS Corp.,* 111 F.3d 1116, 1123 (3d Cir.1997). In fact, the court is aware of only one reported opinion in which a response action contractor was permitted to sue a potentially responsible party under Section 9607(a). *See OHM Remediation Serv. v. Evans Cooperage Co., Inc.,* 116 F.3d 1574, 1581–82 (5th Cir. 1997). In *OHM Remediation,* the court permitted the response action contractor to maintain a cost recovery action against parties who disposed of hazardous substances at the site (CERCLA arrangers) and with whom there was no contractual privity. The difference here, of course, is that the contractor (BB & L) had a contract with the liable party (the City). Nonetheless, the statute does not seem to

---

**5.** The work the court found to have been done negligently is not related to BB & L's soil investigation.

exclude situations like that presented here, and the court concludes that BB & L may sue under the cost recovery provisions of CERCLA.

## B. *Prima Facie Case of CERCLA Liability*

A private party must establish four elements to recover its response costs under CERCLA:

1. the site in question is a CERCLA "facility";
2. a release or threatened release of a hazardous substance has occurred;
3. the release or threatened release caused the party seeking recovery to incur response costs that were consistent with the National Contingency Plan (the "Plan"); [6] and
4. the defendant is a statutorily liable person.

*See Redwing Carriers*, 94 F.3d at 1496–97 (citing *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 889 F.2d 1146, 1150 (1st Cir.1989)). There is no dispute that elements 1, 2 and 4 are satisfied, to wit: Munisport is a CERCLA facility; ammonia is a hazardous substance and has been released at Munisport; and the City, as the current owner of Munisport, is a statutorily liable person. The issue here is whether BB & L's costs were consistent with the Plan.

Both parties presented evidence and argued extensively about whether BB & L costs were consistent with the Plan. The City contends that BB & L's response costs were not consistent because they were inadequately documented, unreasonable in amount, and not cost effective. The City offers a detailed review of the Plan, analyzing the C.F.R. requirements and the words "reasonable," "necessary," and "cost-effective," and concludes that BB & L's actions fell short of providing a CERCLA-quality cleanup. BB & L also presents a thorough argument, describing how its actions and costs substantially complied with the Plan. Based on the EPA's approval of BB & L's work (at least insofar as the EPA evaluated BB & L's compliance with the Consent Decree and Record of Decision and instructed it to continue), the presumption of consistency with the Plan for work done pursuant to a CERCLA consent decree, *see* 40 C.F.R. § 300.700(c)(3)(ii), the testimony of the parties' experts, and BB & L's progress reports and invoices, the court concludes that all of the work for which BB & L seeks CERCLA damages was consistent with the Plan. Accordingly, BB & L established a prima facie case for recovering its response costs from the City.

BB & L is therefore entitled to recover its Category 1 damages in the amount of $375,283.51. As for the Category 2 and 3 damages, the City raises a defense, to which the court now turns.

### C. *The Pay–When–Paid Defense*

The parties' contract contained a provision referred to as the "pay-when-paid" clause. *See* Finding of Fact 9, *supra*. It is undisputed that the state of Florida did not pay the City for BB & L's field data acquisition and surface water sampling work (Category 2 damages) and that the State retained certain money relating to the landfill closure permit application (Category 3 damages) pending the issuance of the permit. Based on these facts, the City argues the pay-when-paid clause prevents BB & L from collecting the damages listed in Categories 2 and 3.[7]

BB & L counters with a multi-pronged response. First, BB & L contends the only applicable defenses to its cost recovery action are those enumerated in 42 U.S.C. § 9607(b): (1) an act of God; (2) an act of war; and (3) an act or omission of a third party with whom the defendant is not in contractual privity. The parties agree

---

6. "The [Plan] is a body of regulations governing the clean up of hazardous waste sites under CERCLA." *Redwing Carriers*, 94 F.3d at 1496 n. 8 (citing 42 U.S.C. § 9605(a) and 40 C.F.R. Part 300 (1995)).

7. The City admits the pay-when-paid provision does not apply to BB & L's Category 1 damages.

none of these defenses apply. Second, BB & L argues enforcing the pay-when-paid clause would undermine CERCLA's goals of prompt remediation of hazardous sites and requiring responsible parties to pay for their pollution. Third, BB & L characterizes the pay-when-paid defense as equitable in nature, and then relies on several CERCLA opinions that hold courts may not consider equitable defenses, such as laches and unclean hands, in CERCLA cost recovery actions.

■ The court begins with the premise that the parties' contract is valid and enforceable. The only reason BB & L was present at Munisport was because the City brought it onto the site by contract. The contract was the result of an arms-length negotiation between two sophisticated parties. It does not contemplate an illegal act, nor was it the product of duress; and its enforcement would not be unconscionable. The pay-when-paid provision is clear on its face; BB & L understood the potential consequences and does not claim any surprise by the City's attempt to enforce it. Unless there is clear law obligating the court to permit BB & L to retain the benefits of its contract but disregard those burdens it now finds undesirable, the court cannot conclude, as BB & L essentially requests, that the pay-when-paid clause is void as against public policy.

Although holding that the equitable defense of laches could not be raised in a CERCLA cost recovery action, the Seventh Circuit discussed what it deemed the "legal or statutory defenses" of *res judicata*, collateral estoppel, accord and satisfaction, and statutes of limitations. *See Town of Munster v. Sherwin–Williams Co., Inc.*, 27 F.3d 1268, 1271–72 (7th Cir.1994). The court explained that the defendant who raises this type of defense does not contest liability under CERCLA, rather "he interposes a legal or statutory shield against having to litigate (or relitigate) the issue or case." *Id.* at 1272. Addressing *res judicata* in particular, the court stated "we would find it difficult to accept that a CERCLA defendant may not raise 'a rule of fundamental and substantial justice, of public policy and of private peace,' as a bar to relitigating issues that were or could have been raised in a previous action." *Id.* (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103 (1981)).

This is precisely the type of defense the City raises here, *i.e.*, BB & L, in a bargained-for exchange, contracted away its right to sue for money not received by the City from the State. By whatever label—estoppel by contract, waiver, covenant not to sue, etc.—the bottom line is that parties ought to be able to rely on the agreements they form with one another. That is *the* central premise of contract law. *See Chambers Dev. Co., Inc. v. Passaic County Util. Auth.*, 62 F.3d 582, 589 (3d Cir.1995) ("The sanctity of a contract is a fundamental concept of our entire legal structure."). Therefore, the court concludes the pay-when-paid provision is valid and enforceable and prevents BB & L from recovering the damages listed in Categories 2 and 3 above.[8]

### III. CONCLUSION

Based on the foregoing findings of fact and conclusions of law, the court concludes BB & L has established a cost recovery claim under CERCLA, 42 U.S.C. § 9607, and is entitled to recover $375,283.51.[9] BB

---

**8.** The City conceded that, as part of its contractual obligations under the pay-when-paid clause, it had a duty to act in good faith in submitting BB & L's invoices to the State and in obtaining payment from the State for BB & L. With regard to the $31,000 in retainage, BB & L argues the City abandoned its application for a landfill closure permit in bad faith, and therefore, the City should be barred from relying on the pay-when-paid defense for these damages. The record does not support BB & L's contention, and the court concludes that the City performed its obligations under the pay-when-paid clause in good faith.

**9.** BB & L conceded, and the court concludes, that BB & L may not recover twice for the same costs. *See* 42 U.S.C. § 9614(b). Because the jury awarded BB & L its Category 1 damages in full, the court merely recognizes BB & L's entitlement to those same damages

& L may not recover the other damages it seeks.   Judgment will be entered by separate order.

under CERCLA, but will not duplicate the     award.