IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 13, 2025 Session

## ESTATE OF MARTHA HARRISON BANE v. JOHN BANE

**Appeal from the Chancery Court for Cocke County**
**No. 08-189/2014-CV-103      James H. Ripley, Chancellor**

_____

## No. E2024-00691-COA-R3-CV

_____

In this declaratory judgment action, the trial court denied the appellant's motions, filed one year after a decision from this Court affirming the trial court's final judgment, seeking to intervene as a party in the lawsuit and to "correct" the trial court's previous order. The trial court also awarded sanctions to the opposing party pursuant to Tennessee Rule of Civil Procedure 11. The appellant timely appealed these rulings. Following our thorough review, we affirm the trial court's denial of the appellant's motion to intervene as untimely. However, we vacate the trial court's award of Rule 11 sanctions and remand for the limited purpose of allowing the trial court to make the appropriate findings concerning its adjudication of the Rule 11 motion, including the ability to hold a hearing, if necessary, regarding the factual analysis required by Rule 11. The appellant's other issues are pretermitted due to his status as a non-party. We decline to award attorney's fees incurred on appeal to the appellee, and we further decline to impose sanctions against the appellee's counsel for representations made during oral argument.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed in Part, Vacated in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and KRISTI M. DAVIS, J., joined.

Roy Andrew Bane, Roanoke, Virginia, Pro Se.

Matthew A. Grossman and Rebekah P. Harbin, Knoxville, Tennessee, for the appellee, John Bane.

## OPINION

### I. Factual and Procedural Background

This is the third appeal filed in this matter regarding a warranty deed conveying approximately eight acres of real property in Cocke County, Tennessee. The factual and procedural history is explained in this Court's Opinion in the first appeal, *Bane v. Bane*, No. E2018-00790-COA-R3-CV, 2019 WL 2714081, at *1 (Tenn. Ct. App. June 28, 2019) ("*Bane I*"):

> On December 15, 2008, Martha Harrison Bane filed a "Complaint for Cancellation of Deed Induced by Fraud and Undue Influence" ("first action") against her son and daughter-in-law, John and Anne Bane ("Defendants"), in the Cocke County Chancery Court ("trial court").[1] In her complaint, Ms. Bane alleged that Defendants had exerted undue influence over her and had fraudulently induced her to transfer a tract of real property to them. Although all of the parties were residents of Virginia, the property in question ("the Property") is located in Cocke County, Tennessee.

> Ms. Bane asserted, *inter alia*, that at the time of the Property's transfer in 2003, John Bane was acting as her attorney-in-fact. Ms. Bane alleged that John Bane falsely represented that she needed to sign the deed transferring title to the Property to Defendants as part of Ms. Bane's estate plan. Ms. Bane further alleged that Defendants informed her the deed would be placed in a lock box and would not be recorded until after her death. According to Ms. Bane, she had no intention of transferring title for the Property to Defendants at the time she signed the deed; rather, she intended for them to receive it only following her death.

> Ms. Bane further asserted that upon her discovery of the transfer of the Property, she revoked the power of attorney granted to John Bane and demanded that he and his wife convey title back to her. Upon John Bane's refusal to do so, Ms. Bane filed this action, seeking title to the Property, damages, and an award of attorney's fees. A copy of the deed transferring the Property to Defendants was attached to the complaint.

> On March 23, 2009, the trial court entered an order, finding that Defendants had received proper service of process and had failed to answer the complaint or otherwise appear. The court thus entered a default

---

[1] Because several of the parties and witnesses in this matter share the same surname, we will refer to the mother, Martha Bane, as "Ms. Bane" and will refer to her children by their full names throughout this Opinion in order to avoid any confusion.

judgment, which set aside the deed from Ms. Bane to Defendants. A Clerk and Master's Deed was accordingly issued, transferring title to the Property back to Ms. Bane.

Ms. Bane subsequently instituted a separate action by filing a "Complaint for Cancellation of Deed of Trust" ("second action") with the trial court on August 27, 2014. In this complaint, Ms. Bane named John and Anne Bane as defendants as well as J. Alan Kingery, Anne Bane's father. Ms. Bane alleged that on June 20, 2007, Defendants had executed a Deed of Trust in favor of Mr. Kingery in the amount of $250,000, which required no payments and set forth no associated interest rate. According to Ms. Bane, Mr. Kingery did not pay any money to Defendants upon the execution of the deed of trust. Rather, Ms. Bane alleged that the trust deed was executed to create a cloud on the title to the Property. Ms. Bane sought to have the deed of trust set aside.

Mr. Kingery subsequently filed a motion to intervene in the first action, asserting that he was an indispensable party thereto. In addition, Mr. Kingery and Defendants filed motions to have the default judgment from the first action set aside. On March 30, 2015, the trial court entered an order granting the motions to set aside the default judgment and finding Mr. Kingery to be a necessary and indispensable party. Rather than granting Mr. Kingery's motion to intervene in the first action, the trial court consolidated the first action with the second action, which permitted Mr. Kingery to proceed as a named party and rendered the motion to intervene moot. The court entered a subsequent order on September 15, 2015, allowing the intervention of the Martha Bane Trust as a party to the consolidated cases.

On October 13, 2016, Defendants and Mr. Kingery filed a joint motion seeking sanctions against Ms. Bane for failing to appear for her scheduled deposition. The trial court subsequently entered an order directing Ms. Bane to appear for a deposition within thirty days. On December 8, 2016, Defendants and Mr. Kingery filed a renewed motion for sanctions, claiming that Ms. Bane had appeared for a deposition on December 2, 2016, but that the deposition was not completed because Ms. Bane was not feeling well. On July 11, 2017, Elizabeth Caldwell Kingery was substituted as a party in place of Mr. Kingery, who had recently passed away.

The trial court conducted a bench trial on February 6, 2018. The trial court then entered a final order on February 12, 2018, wherein the court dismissed Ms. Bane's claims with prejudice. The Clerk and Master's deed executed in 2009, which had conveyed title for the Property to Ms. Bane, was set aside, as well as subsequent deeds conveying the Property to the

Martha Bane Trust. The court specifically upheld the deed from Ms. Bane to Defendants and the deed of trust in favor of Mr. Kingery.

In its memorandum opinion incorporated into the final judgment, the trial court explained in pertinent part:

> The Court has listened to the evidence, which by the way is really in many respects confusing and just terribly convoluted, the dealings between the parties, terribly convoluted, but at the end of the day the Court is constrained to dismiss the complaint. The Court will explain its reasoning.
>
> First of all, [Ms. Bane] claims that Mr. John Bane held a power of attorney for Martha Harrison Bane, which he did for sure, held a power of attorney which was dated May 9, 2003. The deed made from Martha Harrison Bane to John Bane was dated . . . October 20, 2003. John Bane held a deed of trust, or rather a power of attorney for his mother Martha Bane certainly in October of 2003. From the record here, the Court cannot find that there had been any use of the power of attorney between the time it was granted in May of 2003 and the time the deed was made in October of 2003.
>
> There may have been use of the power of attorney after that, but there's no evidence in the record here that there was use of the power of attorney between May and October. Accordingly, I don't think the presumption of undue influence by reason of a confidential relationship between John Bane and Martha Bane, I don't think that presumption arises with respect to this transaction.
>
> I also note that there's no evidence in the record that the power of attorney was used in connection with the very deed at issue. Martha Bane signed the deed herself. John Bane did not sign the deed as power of attorney for Martha Bane as grantor and himself as grantee. Martha Bane herself signed it.
>
> * * *
>
> Perhaps more importantly to the Court, there are a series of deeds in the record beginning with Exhibit 15 and running through Exhibit 19, deeds where -- deeds of gift, that's what they're styled, deeds of gift where Martha Bane made deeds of

gifts for real property to some of her children, particularly Exhibit 15, a deed from Martha Bane to Philip Bane, one of her sons.

Another deed, Exhibit 16, from Martha Bane to Philip Bane. Again, her son.

Then Exhibit 17, a deed from Martha Bane to Martha B. Carnes. Martha B. Carnes is a daughter of Martha Harrison Bane. It's dated May 21, 2003.

A deed July 7, 2003 between Martha Bane and Martha Carnes, Exhibit 18.

A deed dated April 2, 2004 from -- again a deed of gift. All of these are styled deeds of gift. April 2nd, 2004 from Martha Bane to George Annis and Elizabeth Harrison Annis, A-n-n-i-s, Exhibit 19.

And then in between those deeds, in the same time series, was the deed that's at issue here, a deed to John Bane. What does that tell the Court? It tells the Court that Martha Bane, for whatever reason, reasons that were sufficient to her at the time, was making deeds for property she owned to her children, probably perhaps for estate planning purposes, perhaps just she wanted to go ahead and get it done before she died. Whatever her reasons, she was giving her property away to her children. And John Bane, by the way, wasn't the only one. He was one of the ones, but he wasn't the only one.

The evidence also shows that at the same time she made a deed to John Bane for eight acres in Cosby, which by the way was the Harrison home place. At the same time she made that deed, she made another deed to her son Tom Bane. By the way, Tom Bane testified here and the Court was very much impressed with his credibility, I must say, just very much impressed with Tom Bane's credibility.

The trial court further explained that the survey map demonstrated that someone had the property surveyed and divided it so that Tom Bane and John Bane received tracts that were exactly the same size. The court also found that Tom Bane had testified that Ms. Bane told him shortly after the

- 5 -

transfer that she had deeded the Property to John Bane and that he had begun work on it.

According to the trial court's findings, Tom Bane also testified that some years later, in 2008, Ms. Bane called him and asked him to give the property back that she had deeded to him. Tom Bane did so. Ms. Bane then filed the lawsuit against John Bane to recover the Property. The court found that John Bane exerted no undue influence over Ms. Bane. Rather, the court determined that a rift had developed among Ms. Bane's children, which originated with Roy Bane's actions, causing Ms. Bane to change her mind concerning the transfers of property.

On February 28, 2018, Ms. Bane filed a motion to reopen the proof or to alter or amend the judgment. The trial court denied the motion by order dated April 2, 2018. Ms. Bane filed a notice of appeal on May 1, 2018. On September 14, 2018, Defendants and Elizabeth Caldwell Kingery filed a "Suggestion of Death and Motion to Dismiss" in this Court, stating that Ms. Bane had passed away on June 14, 2018. Roy Bane subsequently filed a motion seeking to substitute himself, both as personal representative of Ms. Bane's estate and as trustee of the Martha Bane Trust, as the appellant in this matter. This Court entered an order on October 30, 2018, denying the motion to dismiss and directing the clerk to substitute Roy Bane, executor of the Estate of Martha Harrison Bane ("the Estate"), in place of Ms. Bane as the appellant.

*Id.* at 1-3.

The *Bane I* Court vacated the trial court's order setting aside the 2009 default judgment and remanded the matter to the trial court with instructions to either enter sufficient findings of fact and conclusions of law as to the legal basis for setting aside the default judgment or reconsider its order, due to the order's lack of sufficient factual findings and legal conclusions. *See Bane I*, 2019 WL 2714081, at *7. This Court further directed the trial court to consider any remaining issues. *Id.*

Following remand, the trial court entered findings of fact and conclusions of law on June 25, 2020, ruling, *inter alia*, that the order setting aside the 2009 default judgment should stand because: (1) personal service was never attempted and no summonses were ever issued or returned; (2) the notice by publication was invalid because Ms. Bane knew where Defendants were located and also because she failed to comply with the relevant statutes; and 3) Mr. Kingery was a necessary and indispensable party to the first action due to the deed of trust on the subject property. The trial court further determined that Defendants' Rule 60.02 motion was proper because "the 'reasonable time' requirement

- 6 -

[found in Rule 60.02] does not apply to a void judgment."  The Estate again appealed to this Court.

During the second appeal, the parties asked this Court to extend the remand to allow the trial court to enter a final order disposing of the "ultimate issues in the case." *See Estate of Bane v. Bane*, No. E2020-00978-COA-R3-CV, 2022 WL 853925, at *5 (Tenn. Ct. App. Mar. 23, 2022)("*Bane II*").  On February 12, 2021, the trial court entered an order, which provided:

> After the Court set aside the default judgment on March 30, 2015[,] it conducted a trial on the merits of the consolidated cases, and made extensive findings of fact and conclusions of law.  *See* "Final Order" of February 12, 2018; "Correction of Final Order" dated February 16, 2018; and "Order with Regard to Plaintiff's Motion to Reopen Proof and Alter or Amend Judgment and for New Trial" dated April, 2018.  *See also*, *Roy Andrew Bane, Executor v. John Bane, et al.*, Tenn. Ct. App. No. E2018-00790-COA-R3-CV, slip op. (June 28, 2019) at p.p. 3-5.  Under these circumstances, it is not appropriate or necessary to re-try the case on the merits.
>
> It is, therefore, ORDERED and ADJUDGED that the Court reaffirms its prior:  "Final Order which constituted the first final judgment of this Court, entered February 12, 2018 along with its findings of fact and conclusions of law; "Correction of Final Order" entered February 16, 2018; and "Order with Regard to Plaintiffs Motion to Reopen Proof and Alter or Amend Judgment and for New Trial," entered April 2, 2018, all of which were the subject of Plaintiff's prior appeal.  It is, further,
>
> ORDERED that the Court expressly finds that this Order and Judgment resolves all matters placed at issue among all parties to this cause and therefore constitutes the Final Judgment of this Court.

On appeal, the *Bane II* Court affirmed the trial court's judgment, determining that (1) the trial court had properly set aside the 2009 default judgment as void for lack of personal jurisdiction and (2) Defendants had successfully rebutted the presumption of undue influence as to the 2003 warranty deed.  The *Bane II* Court therefore affirmed the trial court's ruling in all respects, including its determination that the 2003 deed was valid and that the Property accordingly belonged to Defendants.  The Court pretermitted any issue regarding the subsequent deed of trust in favor of Mr. Kingery as moot, finding that the Estate had no standing to contest that deed.

More than one year later, on May 22, 2023, Roy Bane, who was both executor of the Estate and trustee of the Martha Bane Trust ("the Trust"), filed a motion with the trial

court requesting permission to intervene individually in the action as of right pursuant to Tennessee Rule of Civil Procedure 24 and Tennessee Code Annotated § 29-14-107. Roy Bane asserted that inasmuch as Ms. Bane's original complaint for cancellation of the deed was treated as a declaratory judgment action, he should have been made a party to the action pursuant to the declaratory judgment statute because he claimed an interest in the Property. He argued that at the time the trial court entered its 2015 order setting aside the 2009 default judgment, the court lacked jurisdiction because neither he nor the Trust had been made a party or been given notice of the proceedings.[2] Roy Bane concomitantly filed a motion seeking correction of the trial court's February 2018 order. In this motion, Roy Bane asserted that due to an error in the drafting of the trial court's order, the 2018 order did not accurately reflect the court's ruling.

On August 2, 2023, John Bane filed a motion for sanctions pursuant to Tennessee Rule of Civil Procedure 11. In the motion, he asserted that the motions filed by Roy Bane violated Rule 11.02 because they were frivolous and had no basis in law. John Bane averred that he had sent notice to Roy Bane in accordance with the requisite twenty-one-day "safe harbor" provision contained in the Rule, but Roy Bane had failed to withdraw the motions. John Bane thus sought an award of sanctions, including attorney's fees. Roy Bane filed a response denying any violation of Rule 11.

On September 28, 2023, the trial court entered an order denying the motions filed by Roy Bane and granting John Bane's motion for Rule 11 sanctions. The court ordered that Roy Bane would pay John Bane's attorney's fees and expenses in the amount of $4,983.64. Roy Bane filed a motion to alter or amend wherein he essentially re-argued the averments of his May 2023 motions. The trial court entered an order denying the motion to alter or amend on April 11, 2024. Roy Bane timely appealed.

---

[2] In his motion to intervene, Roy Bane appears to have set forth arguments concerning both his own intervention as a necessary party in the action as well as the Trust's purported status as a necessary party prior to entry of the March 2015 order. Because the Trust was allowed to intervene in September 2015, however, the Trust was a party when the final judgment was entered and had the opportunity to participate in both appeals. Therefore, any issue that the Trust could have raised regarding the March 2015 order has been waived by virtue of the Trust's failure to raise it during the trial court proceedings or on appeal. Moreover, to the extent that Roy Bane's arguments on appeal could be construed as advocating for a determination that the "Martha Harrison Bane Irrevocable Trust," which is apparently a separate entity from the Trust, should have been deemed a necessary and indispensable party prior to entry of the March 2015 order, we find this argument unavailing. The only evidence in the record concerning the Martha Harrison Bane Irrevocable Trust having maintained an interest in the Property is a recitation in the trial court's February 2018 order noting that Martha Bane had deeded the Property to the Martha Harrison Bane Irrevocable Trust on August 30, 2008, which then deeded the Property to the Trust on that same date. Roy Bane acknowledges this fact in his May 2023 motions. Ergo, it appears that any interest that may have been held by the Martha Harrison Bane Irrevocable Trust only existed for a short period in 2008. As such, we will address Roy Bane's arguments on appeal with respect to his own intervention but not with respect to the intervention of either trust.

## II. Issues Presented

Roy Bane presents the following issues for our review, which we have restated slightly:

1.     Whether the trial court erred by failing to recognize that it lacked subject matter jurisdiction when it issued the March 2015 order setting aside the default judgment.

2.     Whether the trial court erred by denying Roy Bane's motion to intervene as an indispensable party.

3.     Whether the trial court erred by denying Roy Bane's motion to correct the record.

4.     Whether the trial court erred by denying Roy Bane's motion to alter or amend its previous order.

5.     Whether the trial court erred by imposing sanctions against Roy Bane.

John Bane raises the following additional issues:

6.     Whether Roy Bane has standing to challenge the subject matter jurisdiction of the trial court.

7.     Whether the trial court properly exercised subject matter jurisdiction to adjudicate this matter on March 30, 2015, and to render a final judgment on June 22, 2020, because Roy Bane and the Martha Bane Trust were represented by the Estate.

8.     Whether this court should award to John Bane damages, including attorney's fees, due to Roy Bane's filing of a frivolous appeal.

## III. Standard of Review

Pursuant to Tennessee Rule of Civil Procedure 24.05, an "order granting or denying a motion to intervene filed pursuant to this rule shall be a final judgment for purposes of Tenn. R. App. P. 3." A trial court's determination concerning a motion to intervene, other than the issue of the motion's timeliness, is reviewed *de novo* with no presumption of correctness. *See*, *e.g.*, *Gonzalez v. Tenn. Dep't of Children's Servs.*, 136 S.W.3d 613, 616 (Tenn. 2004); *Nat'l Pub. Auction Co., LLC v. Camp Out, Inc.*, No. M2015-00291-COA-R3-CV, 2016 WL 690438, at *3 (Tenn. Ct. App. Feb. 18, 2016). The timeliness of the motion is reviewed under an abuse of discretion standard. *See State v. Brown & Williamson*

*Tobacco Corp.*, 18 S.W.3d 186, 191 (Tenn. 2000). "A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

Regarding *pro se* litigants, this Court has determined:

Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

The courts give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs. Accordingly, we measure the papers prepared by pro se litigants using standards that are less stringent than those applied to papers prepared by lawyers.

Pro se litigants should not be permitted to shift the burden of the litigation to the courts or to their adversaries. They are, however, entitled to at least the same liberality of construction of their pleadings that Tenn. R. Civ. P. 7, 8.05, and 8.06 provide to other litigants. Even though the courts cannot create claims or defenses for pro se litigants where none exist, they should give effect to the substance, rather than the form or terminology, of a pro se litigant's papers.

*Young v. Barrow*, 130 S.W.3d 59, 62-63 (Tenn. Ct. App. 2003) (internal citations omitted).

IV. Timeliness of Motion to Intervene

Roy Bane has appealed the trial court's order denying his motion to intervene as of right filed pursuant to Tennessee Rule of Civil Procedure 24.01. As our Supreme Court has explained: "A party seeking to intervene as of right under Rule 24.01 must establish that (1) the application for intervention was timely . . . ." *Brown*, 18 S.W.3d at 190. *See* Tenn. R. Civ. P. 24.01 ("Upon <u>timely</u> motion any person shall be permitted to intervene" when the Rule's other requirements are met) (emphasis added). In its September 28, 2023 order, the trial court determined that Roy Bane's motion to intervene was untimely. As this Court has previously explained:

The timeliness of an intervention is governed by equitable principles, and is determined by the facts and circumstances of each particular case. In determining whether an intervention is timely, courts consider the following factors:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervener knew or reasonably should have known of his interest in the case; (4) the prejudice to the original parties due to the proposed intervener's failure after he knew or reasonably should have known of his interest in the case to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Velsicol Chemical Corp. v. Enenco, Inc.*, 9 F.3d 524, 531 (6th Cir.1993); *Triax Co. v. TRW, Inc.*, 724 F.2d 1224, 1228 (6th Cir.1984).

\* \* \*

Generally, an applicant for intervention must show proper diligence, and the right to intervene may be lost by unreasonable delay or laches after knowledge of the suit. *See EEOC v. United Air Lines, Inc.*, 515 F.2d 946 (7th Cir. 1975) (holding denial of intervention depends in part on time during which applicant knew of interest in case but failed to apply to intervene.)

*Am. Materials Techs., LLC v. City of Chattanooga*, 42 S.W.3d 914, 916 (Tenn. Ct. App. 2000).

Roy Bane, acting as trustee of the Trust, had filed a motion in 2015 asking the trial court to allow the Trust to intervene as an indispensable party and to set aside the trial court's March 30, 2015 order invalidating the 2009 default judgment. On September 15, 2015, the trial court entered an order allowing the Trust to intervene as a necessary and indispensable party and denying the motion to set aside the March 2015 order. The trial court also stated in the September 15, 2015 order: "Roy Bane may be entitled to intervene in this action in his individual capacity upon the filing of a proper motion demonstrating his interest in the property at issue in this cause." However, despite the trial court's invitation, the record includes no motion filed by Roy Bane seeking intervention until his May 2023 motion, which was filed more than two years after entry of the trial court's final judgment and more than one year after the conclusion of the second appeal.

As this Court has previously recognized, Tennessee has a "general rule against intervention after entry of a final judgment or decree." *See Coxwell v. Watco Cmtys. LLC*,

694 S.W.3d 640, 645 (Tenn. Ct. App. 2023) (quoting *Am. Materials Techs.*, 42 S.W.3d at 916). Although there are exceptions to this rule, *see Hamilton Nat'l Bank v. Woods*, 238 S.W.2d 109, 112 (Tenn. Ct. App. 1948), the individual or entity who seeks to intervene after entry of a final judgment must still demonstrate that "the rights of the original litigants are not injuriously affected, the court still retains jurisdiction over the judgment and subject matter, and good and sufficient cause is shown for the delay." *Id.*

In *Coxwell*, the party who sought to intervene was one of two equal members in two limited liability companies, which were being sued by the other member for money he had allegedly loaned to the companies. 694 S.W.3d at 641. The plaintiff, whose claims included breach of contract, unjust enrichment, and equitable subrogation, also sought entry of a declaratory judgment. *See id.* The plaintiff reached a settlement with the companies, but the non-party member objected to the settlement and sought to intervene in the lawsuit after an agreed order had been entered approving the settlement. *See id.* The trial court denied the motion to intervene as untimely. *Id.*

On appeal, the *Coxwell* Court affirmed the trial court's decision to deny intervention. *See id.* The Court reiterated the trial court's findings that "the lawsuit already had progressed to its conclusion; [] the purpose of [the non-party's] intervention was to change the terms of a bargained-for deal; [] [the non-party] waited many months to move to intervene; [the plaintiff] had given up his right to a trial on the merits; and [] no unusual circumstances existed in the case to justify [the non-party's] late intervention." *See id.* at 645-46. The Court further reasoned:

> [The non-party] was aware of the litigation and received periodic updates. If he felt that he needed to be a party to the lawsuit in order to adequately safeguard his interests, he could have acted sooner to intervene. Instead, he moved to intervene only after the agreed order was entered. As aptly put by the Trial Court, "[t]here has to be finality at some point in these cases . . . ." A non-party is not entitled to upend a negotiated settlement at the last minute, or indeed after the last minute as in this case, merely because he is dissatisfied with the result. No injustice was done to [the non-party] in the denial of his motion to intervene. He simply waited too long to intervene as found by the Trial Court.

*Id.* at 646. Accordingly, the *Coxwell* Court determined that the trial court had not abused its discretion in denying intervention as untimely. *Id.*

Similarly, here, Roy Bane clearly has been aware of these proceedings since at least 2015 when he filed the motion to intervene on behalf of the Trust. Despite the trial court's clear instruction in its September 2015 order that Roy Bane could file a motion to intervene on his own behalf if he could demonstrate an interest in the Property, he failed to file any such motion for nearly eight years. As trustee of the Trust and executor of the Estate, both

- 12 -

of whom were parties to the proceedings, Roy Bane was aware of the continuing proceedings. The Estate and the Trust were given notice of the actions occurring in this case, including the trial court's September 2015 order stating that Roy Bane could file a motion to intervene individually and should do so if he wished to participate as a party. Despite his ongoing involvement, Roy Bane did not file a motion seeking to intervene on his own behalf until long after this matter had been concluded. Moreover, Roy Bane has demonstrated no "good and sufficient cause" for his delay in seeking individual intervention and has failed to show the "existence of unusual circumstances militating . . . in favor of intervention." *See Am. Materials Techs*., 42 S.W.3d at 916; *see also Hamilton Nat'l Bank*, 238 S.W.2d at 112.

Considering the factors with regard to the timeliness of a motion to intervene delineated in *Am. Materials Techs*., 42 S.W.3d at 916, we note that by the time Roy Bane filed his motion to intervene: (1) the lawsuit had been concluded; (2) the intervention served no discernible purpose; (3) Roy Bane had known or reasonably should have known of his interest in the Property for at least eight years; (4) the original parties would have been significantly prejudiced due to Roy Bane's failure after he knew or reasonably should have known of his interest in the case to apply promptly for intervention; and (5) there were no unusual circumstances militating in favor of intervention. We therefore determine that the trial court did not abuse its discretion in denying intervention.

Having determined that Roy Bane's motion to intervene was properly denied by the trial court, we determine that any remaining substantive issues raised by him on appeal must be pretermitted. *See Coxwell*, 694 S.W.3d at 646 ("[A]s a failed intervenor, [the non-party] is unable to raise any other issues in this matter, jurisdictional or otherwise."). As the *Coxwell* Court noted: "[I]ntervention is the requisite method for a nonparty to become a party to a lawsuit." *Id.* (quoting *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933 (2009) (citation omitted)). Accordingly, when a proposed intervenor's motion is denied, the proposed intervenor is not a party to the litigation and the appellate court cannot consider any other issues raised by the non-party, including subject matter jurisdiction issues. *See Coxwell*, 694 S.W.3d at 646. Roy Bane's other issues raised on appeal are therefore pretermitted.

## V. Sanctions

Despite our determination that Roy Bane's motion to intervene was properly denied and that his other substantive issues regarding the underlying proceedings are pretermitted, we must still address Roy Bane's issue concerning the sanctions levied against him by the trial court pursuant to Tennessee Rule of Civil Procedure 11. *See, e.g.*, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) (noting that "the imposition of a Rule 11 sanction is not a judgment on the merits of an action" but rather " requires the determination of a collateral issue" of whether Rule 11 has been violated and sanctions are warranted).

After Roy Bane filed his post-judgment motions in 2023, John Bane filed a motion seeking sanctions against Roy Bane, stating that the 2023 motions violated Rule 11.02 because the motions had no legal basis and because Roy Bane had failed to withdraw them after the requisite "safe harbor" notification had been sent. Tennessee Rule of Civil Procedure 11.02 states that by presenting a pleading to the court, an attorney or unrepresented party certifies to the court that such pleading:

(1)     [] is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2)     the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3)     the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4)     the denial of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Tennessee Rule of Civil Procedure 11.03 specifically provides:

If, after notice and a reasonable opportunity to respond, the court determines that subdivision 11.02 has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision 11.02 or are responsible for the violation.

(1)     How Initiated.

(a)     By Motion.  A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision 11.02.  It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately

corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. . . .

(b)     On Court's Initiative. On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision 11.02 and directing an attorney, law firm, or party to show cause why it has not violated subdivision 11.02 with respect thereto.

(2)     Nature of Sanctions; Limitations. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (a) and (b), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

(a)     Monetary sanctions may not be awarded against a represented party for a violation of subdivision 11.02(2).

(b)     Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.

(3)     Order. When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.

This Court reviews a trial court's decision to impose sanctions under an abuse of discretion standard, *see Brown v. Shappley*, 290 S.W.3d 197, 200 (Tenn. Ct. App. 2008), and a trial judge's decision is entitled to great weight on appeal, *see Stigall v. Lyle*, 119 S.W.3d 701, 706 (Tenn. Ct. App. 2003). Although *pro se* litigants are sometimes afforded more leniency in their filings than trained attorneys, they are not excused from compliance with our rules of procedure. *See Kaylor v. Bradley*, 912 S.W.2d 728, 733 n.4 (Tenn. Ct. App. 1995). As specifically stated in Rules 11.02 and 11.03, unrepresented parties are subject to the same requirements as attorneys with regard to the filing of pleadings.

- 15 -

As this Court has clarified concerning the appropriate analysis to be conducted when a Rule 11 motion is filed:

> Once the motion is put at issue, it becomes the duty of the trial court to determine whether Tenn. R. Civ. P. 11.02 has been violated. The test to be applied by the court when deciding whether an attorney's conduct is sanctionable as a violation of Rule 11 "is one of objective reasonableness under all the circumstances, and the reasonableness of the attorney's belief must be assessed in light of the circumstances existing at the time the document in question was signed." *Andrews* [*v. Bible*], 812 S.W.2d [284,] 288 [(Tenn. 1991)] (internal citation omitted).
>
> * * *
>
> Furthermore, the court conducting the examination must avoid using the wisdom of hindsight and, instead, ascertain what was reasonable to believe at the time the pleading was signed by the attorney. *See Andrews*, 812 S.W.2d at 288 (citing *Cruz*, 896 F.2d at 631) (stating the Advisory Committee notes to the federal version of Rule 11 state "[t]he Court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time [of signing]"). For these reasons, a Rule 11 review is "*like a snapshot*," the review "*focuses upon the instant when the picture is taken-when the signature is placed upon the document*." *Andrews*, 812 S.W.2d at 290 (quoting *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 874 (5th Cir. 1988)) (emphasis added).

*Thomas & Assocs., Inc. v. Tenn. Am. Contractors, Inc.*, No. M2008-01845-COA-R3-CV, 2009 WL 2569256, at *4-6 (Tenn. Ct. App. Aug. 19, 2009) (footnotes omitted). With respect to the specific requirements of Rule 11.03(3), the Court further explained:

> If the trial court concludes that Rule 11 has been violated, the court is required to make fact-intensive determinations, *Hooker v. Sundquist*, 107 S.W.3d 532, 537 (Tenn. 2002), and "the court shall describe the conduct determined to constitute a violation of this rule." Tenn. R. Civ. P. 11.03(3). For purposes of Rule 11 sanctions, merely stating at the conclusion of the trial on the claims at issue that there was no factual or legal basis for a claim or that the proof was not sufficient to support the claims is insufficient; instead, the court is to make specific factual determinations, such as, whether the attorney failed to make a reasonable pre-filing investigation of the facts and whether the law as applied to the facts known at the time the pleading was signed did or did not reasonably warrant the legal position asserted in the pleading. *See Andrews*, 812 S.W.2d at 288 (citing *Cruz v. Savage*, 896

F.2d 626, 631 (1st Cir. 1990); *Whittington v. Ohio River Co.*, 115 F.R.D. 201, 209 (E.D. Ky. 1987)) (holding that findings regarding the attorney's factual investigation, legal research and analysis are to be evaluated under the objective standard based upon the circumstances existing at the time the pleading was signed).

If a violation is found and a sanction is to be imposed, the trial court shall also "explain the basis for the sanction imposed." Tenn. R. Civ. P. 11.03. If a sanction is imposed, the sanction

> shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated . . . . [T]he sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

Tenn. R. Civ. P. 11.03(2).

*Id.* at 4-5. *See McGahey v. McGahey*, No. W2003-01051-COA-R3-CV, 2003 WL 22272350, at *6 (Tenn. Ct. App. Oct. 1, 2003) (reversing the trial court's order imposing sanctions on the appellant's counsel because the "trial court failed to make a specific finding that [counsel] violated Rule 11 by failing to investigate the facts upon which the Motion was made and by failing to have evidentiary support for the allegations" and determining that the trial court's "failure to explain is in direct violation of Rule 11.03(3)."). In addition, inasmuch as Rule 11.03 provides that any award of attorney's fees must be reasonable, the trial court should also consider the factors contained in Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.5(a), when determining the reasonableness of the amount of fees awarded. *See, e.g.*, *Salas v. Rosdeutscher*, No. M2021-00449-COA-R3-CV, 2024 WL 1119818, at *1 (Tenn. Ct. App. Jan. 9, 2024) ("When monetary sanctions include legal expenses, the appropriate amount of legal expenses should be determined using the relevant portions of Tenn. S. Ct. R. 8, . . . the rule generally used by courts when they are required to award reasonable attorneys' fees." (quoting *Mansfield v. Mansfield*, No. 01-A019412-CH-0058,1995 WL 643329, at *5 (Tenn. Ct. App. Nov. 3, 1995))).

Here, the trial court entered an order on September 28, 2023, concerning both Roy Bane's post-judgment motions and John Bane's motion for sanctions pursuant to Rule 11. The court's order stated in its entirety:

- 17 -

This cause came to be heard before the Chancery Court for Cocke County, Tennessee, the Honorable James H. Ripley presiding, sitting in Dandridge, on September 13, 2023 upon Defendant's, John Bane's, Motion for Tenn. R. Civ. P. 11 Sanctions against Intervening party, Roy Bane, individually, *pro se* ("Roy Bane"). Appearing for the Defendant John Bane was Rebekah P. Harbin, Esq. Roy Bane also appeared before the Court and represented himself *pro se*. John Bane sought denial of the Motion of Roy Andrew Bane to Intervene as an Indispensable Party and the Motion to Correct the Final Order, as well as an award of his attorney's fees in the Motion for Sanctions. The Court finds that Defendant John Bane's Motion for Tenn. R. Civ. P. 11 Sanctions is well taken, and that Roy Bane did not timely intervene in this matter. It is therefore

**ORDERED** that the Motion of Roy Bane to Intervene as an Indispensable Party and Motion to Correct the Final Order is hereby **DENIED**. It is further

**ORDERED** that the Defendant John Bane's Motion for Tenn. R. Civ. P. 11 Motion is **GRANTED**. It is further

**ORDERED** that Roy Bane shall pay the attorney's fees and expenses Defendant John Bane has incurred in filing the Motion for Tenn. R. Civ. P. 11 Sanctions in the amount of $4,983.64.

It is so **ORDERED**.

Based on the above-cited precedent from this Court, we determine that the trial court failed to make sufficient findings in its order pursuant to the requirements of Rule 11.03(3). Specifically, the trial court failed to explain its findings concerning the reasonableness of Roy Bane's belief regarding the legitimacy of his motion to intervene "in light of the circumstances existing at the time the document in question was signed" and to "describe the conduct determined to constitute a violation of [Rule 11]." *See Thomas & Assocs.*, 2009 WL 2569256, at *4-5. In addition, the trial court failed to "explain the basis for the sanction imposed." *See id.* (citing Tenn. R. Civ. P. 11.03(3)). Accordingly, we must vacate the award of sanctions and remand this matter to the trial court for the limited purpose of allowing the trial court to make the appropriate findings concerning its adjudication of the Rule 11 motion. *See Lindsey v. Lambert*, 333 S.W.3d 572, 578 (Tenn. Ct. App. 2010) (explaining that this Court may vacate and remand when a trial court fails to make sufficient findings pursuant to Rule 11.03). The trial court may also hold a hearing, if necessary, regarding the factual analysis required by Rule 11.

- 18 -

## VI. Attorney's Fees on Appeal

John Bane has requested that this Court award him damages, including attorney's fees, due to Roy Bane's filing of what John Bane characterizes as a frivolous appeal. As this Court has previously explained regarding frivolous appeals:

> Parties should not be forced to bear the cost and vexation of baseless appeals. Accordingly, in 1975, the Tennessee General Assembly enacted Tenn. Code Ann. § 27-1-122 to enable appellate courts to award damages against parties whose appeals are frivolous or are brought solely for the purpose of delay. Determining whether to award these damages is a discretionary decision.
>
> A frivolous appeal is one that is devoid of merit, or one that has no reasonable chance of succeeding.

*Young*, 130 S.W.3d at 66-67. Similarly, Tennessee Code Annotated § 27-1-122 provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Exercising our discretion, we determine that this appeal was not frivolous or taken solely for delay. We therefore decline to award attorney's fees to John Bane as damages in this matter.

## VII. Sanctions on Appeal

Finally, during the appellate proceedings, Roy Bane filed a motion seeking sanctions against John Bane's counsel concerning alleged misrepresentations made by counsel during oral argument before this Court. John Bane's counsel responded, asserting that no misrepresentations had been made or intended.

Regarding sanctions on appeal, Tennessee Court of Appeals Rule 17.01 provides:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a notice of appeal, application for permission to appeal, application for extraordinary appeal, petition for recusal appeal, brief, motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, --

(1)    it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2)    the issues, claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3)    the allegations and other factual contentions have evidentiary support;

(4)    the denial of factual contentions is warranted on the evidence; and

(5)    the filing is neither repetitive, frivolous nor vexatious and does not constitute an abuse of the judicial process.

Rule 17.02 allows this Court to impose sanctions on an attorney or unrepresented party who violates Rule 17.01, after "notice and a reasonable opportunity to be heard." However, Rule 17.02 also expressly provides:

A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision 17.01. It shall be served as provided in Tennessee Rule of Appellate Procedure 20, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged filing, issue, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion.

(Emphasis added.)

Here, Roy Bane certified in his motion for sanctions that it was served on John Bane's counsel on July 15, 2025, the same day that it was filed with this Court. As such, Roy Bane failed to comply with the provisions of Rule 17.02, and we therefore decline to grant him any relief. Moreover, assuming, *arguendo*, that Roy Bane had complied with the requirements of Rule 17.02 in the filing of his motion, we have reviewed the allegations and counsel's response and have determined that no sanctionable conduct occurred.

- 20 -

## VIII. Conclusion

For the foregoing reasons, we affirm the trial court's denial of Roy Bane's motion to intervene as untimely.  However, we vacate the trial court's award of sanctions based on Rule 11 and remand this matter to the trial court for the limited purpose of allowing the trial court to make the appropriate findings concerning its adjudication of the Rule 11 motion and to hold a hearing, if necessary, regarding the factual analysis required by Rule 11.  Roy Bane's other issues are pretermitted due to his status as a non-party.  We decline to award attorney's fees incurred on appeal to John Bane, and we further decline to impose sanctions against John Bane's counsel for representations made during oral argument. Costs on appeal are assessed to the appellant, Roy Bane.


s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE